IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN J. SHINE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 23-1952 |
| v. | : | |
| | : | |
| COUNTY OF MONTGOMERY, *et al.* | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Goldberg, J.                                                                                             November 1, 2023

      Plaintiff Bryan J. Shine, proceeding *pro se*, brings this action pursuant to 42 U.S.C. §§ 1983, 1981, and 1985(2) alleging violations of his constitutional rights and conspiracy to violate his rights. He names as Defendants the County of Montgomery, County of Chester, County of Dauphin, Francis Chardo, Maureen Treston, William Mann, Trooper John Doe of the Pennsylvania State Police, Deborah E. Curcillo, Nicholas Chimienti, Jr., Jacqueline Carroll Cody, Michelle Frei, Correctional Officer John/Jane Does of the Chester County Prison, two unknown named John Roes of the Dauphin County Sheriff's Office, Ronald M. Phillips, and Allison Bell Royer. All Defendants except the County of Montgomery and Trooper John Doe of the Pennsylvania State Police have filed Motions to Dismiss. For the following reasons, I will grant all of the Motions in their entireties.

**I.      FACTS IN THE COMPLAINT**

      The following facts are set forth in the Complaint. I must accept all factual allegations in the Complaint as true and construe the allegations in the light most favorable to Plaintiff. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

      Plaintiff alleges that throughout the spring, summer, and fall of 2021, Plaintiff contacted the Dauphin County District Attorney's Office, specifically Defendant District Attorney Francis Chardo, seeking assistance in vacating a guilty plea from 2010 because of a lack of evidence to support the

1

conviction and newly discovered evidence proving Plaintiff's innocence. Alternatively, Plaintiff sought expungement of the records or a sealing of the records and conviction from public view. Defendant Chardo and Dauphin County declined to help Plaintiff and, instead, "orchestrated a criminal and tortuous conspiracy to retaliate against the Plaintiff and suppress the plaintiff's civil rights under the color of law." (Compl. ¶¶1, 3–4.)

On October 22, 2021, a uniformed trooper with the Pennsylvania State Police arrived at Plaintiff's residence in Mont Clare, Montgomery County, Pennsylvania, and stated, in the presence of Plaintiff's landlord, that he had a warrant to compel Plaintiff's fingerprinting. According to the Complaint, Chardo knew that the case against Plaintiff was based on numerous lies and falsehoods and was only prosecuted to chill Plaintiff's civil rights. Plaintiff alleges that Chardo waited over eleven years to get the fingerprint order. Judge Deborah E. Curcillo, who issued the order to compel fingerprints, allegedly colluded with Chardo against Plaintiff despite knowing the case against him had no merit. (Id. ¶¶ 5–6, 7–8, 11–14.)

Plaintiff alleges that Maureen Treston, a Collections Enforcement Officer for Chester County, filed the application for the bench warrant based on his "Failure to Appear for Fines and Cost Contempt Court." The warrant, which was signed by Judge Curcillo, stated that the warrant was issued for Plaintiff and that, "[u]pon apprehension, he will be taken for fingerprinting and processing," that "[a]fter processing, he may be released," and that if he refused to submit to processing, "he is to be committed to the Dauphin County Prison pending a contempt hearing." (ECF No. 2 pp. 22 and 24.)

The Pennsylvania State Trooper never showed Plaintiff the warrant but handcuffed Plaintiff and transported him to the Skippack barracks of the State Police. Plaintiff was fingerprinted and held handcuffed and shackled to a bench for over thirty minutes. The Trooper then informed Plaintiff that he was being held on warrant from Dauphin County. Plaintiff claims that the only probation warrant was from Chester County for a case from 2014, which was closed with a guilty plea before Defendant Judge Cody in 2015. According to Plaintiff, Defendant prosecutor Michelle Frei withheld numerous pieces of

evidence, and Judge Cody appointed as counsel who was "an incoherent moron." The Complaint asserts that Defendant Frei made a deal with Defendant Cody and appointed counsel to get the case closed without giving Plaintiff any chance to be heard. Plaintiff's probation in the Chester County case ended in 2017. Plaintiff claims that the Chester County District Attorney's Office treated him "horribly" because of his civil rights action against the County. (Compl. ¶¶ 15–20, 23–36.)

Later on October 22, 2021, Plaintiff was transported to Montgomery County Correctional Facility ("MCCF"). The Trooper took his cell phone, and Plaintiff was strip searched and processed. Plaintiff was held at MCCF for several hours waiting for transport to Chester County Prison. Plaintiff notes that he had previously sued MCCF relating to his being raped in 2013 while improperly in custody. (Id. ¶¶ 38–50.)

Later that evening, Plaintiff was checked into Chester County Prison, where he was again strip searched, but at no time was he informed as to why he was being held except for the fact that there was a probation warrant out of Chester County. Plaintiff believes that the only reason he was being held was to suppress his First Amendment rights. Plaintiff alleges that Defendant Treston, a Collections Enforcement Officer for Chester County, contacted his aunt and uncle demanding they pay her money which plaintiff supposedly owed, but they believed it was a scam and refused to pay. (Id. ¶¶ 60–67.)

Plaintiff was held in Chester County Prison over the weekend and, the following Monday, was called into a meeting with a prison case worker, who informed him that he was being held on a probation warrant regarding supposedly not having paid fines and costs regarding the 2014 case in Chester County. Plaintiff spoke on the phone with Defendant Treston, who stated that the probation warrant for "failure to appear" was being lifted that day. Plaintiff was then given a date and time to appear before Defendant Judge Royer on December 16, 2021. (Id. ¶¶ 69–72.) The Order to Release from Custody stated that "as the bench warrant dated April 29, 2021 was executed on October 22, 2021, and the defendant having taken steps to remedy the alleged contemptuous conduct, upon request of Maureen Treston, Collection Enforcement Officer," Plaintiff was to be released. (ECF No. 2, p. 29; Compl. ¶¶ 75–78, 96.)

3

Plaintiff claims that despite the warrant being lifted, he was held for three more days. On Wednesday, October 27, 2021, Plaintiff was transported to Harrisburg by two John Roe Defendants—under the direction of Defendant Chardo and Defendant Nicholas Chimienti, Jr. Plaintiff remained handcuffed and shackled during the more than one hundred miles to Harrisburg. He was then processed and again strip searched at 3:40 p.m. Even though Defendants Chardo, John Roes, and Chimienti knew that the business office of Dauphin County Prison closed at 4:00 p.m., they did not inform Plaintiff that he was being released until 4:10 p.m. As a result, Plaintiff could not get his debit card, credit cards, and cash, and had to return the following day. Plaintiff was thus forced to walk the streets of Harrisburg for the evening before getting admitted to a men's crisis homeless shelter, where he spent the night until he could return to the Dauphin County Prison and collect his property. From Harrisburg, Plaintiff traveled on Amtrak for over twelve hours to get home. As he missed several days of work, he was terminated and had to pawn family heirlooms and valuables to pay bills. (Id. ¶¶ 80–94, 99–100, 103–108.)

On December 16, 2021, Plaintiff presented himself to the probation office and paid $20 as directed by Defendant Treston, who informed him that his name was being removed from the hearing list and he only needed to continue to pay $20 each and every month to avoid re-arrest Plaintiff nonetheless appeared as scheduled before Judge Royer, at which time Defendants Mann and Treston informed Judge Royer that they had requested a failure to appear warrant earlier in 2021 because of Plaintiff's supposed failure to pay costs. When Plaintiff tried to speak, Judge Royer rescheduled the hearing for March 2, 2022. (Id. ¶¶ 109–14.)

On March 2, 2022, Plaintiff appeared for the contempt hearing, at which time Defendant William Mann, the Collections Enforcement Unit Supervisor of the County of Chester's Probation Department, moved to withdraw the contempt because the Chester County case against Plaintiff did not contain any order to pay fines or costs. Plaintiff asserts that Chester County, "through sheer stupidity and gross negligence never bothered to check their own records" which resulted in a faulty warrant issued by an "incompetent judge" who would not do anything to protect Plaintiff's civil rights." (Id. ¶¶ 124–31.)

4

Plaintiff filed the current action on May 23, 2023 setting forth claims for civil rights violations, civil rights conspiracy, and various state law claims. Specifically, he enumerates the following claims for relief: (1) First Amendment retaliation; (2) unlawful seizure against Montgomery County; (3) unlawful seizure against Chester County; (4) unlawful seizure against Dauphin County; (5) kidnapping against Dauphin County; (6) aiding and abetting kidnapping against Chester County; and (7) conspiracy to violate civil rights against all Defendants.

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S.

at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

### III. MOTION TO DISMISS BY JACQUELINE CARROLL CODY, DEBORAH CURCILLO, AND ALLISON BELL ROYER

The first Motion at issue is brought by Defendants Jacqueline Carroll Cody (Chester County Judge), Deborah Curcillo (Dauphin County Judge), and Allison Bell Royer (Chester County Judge) (collectively, the "Judicial Defendants"), who seek to dismiss all claims against them on grounds of judicial immunity.

To the extent Plaintiff sues the Judicial Defendants in their official capacities as judges in their respected counties, it is well established that they are immune from suit under the Eleventh Amendment. The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment presupposes that each state is a sovereign entity in our federal system and that, as

a sovereign, it is not amenable to the suit of an individual without its consent. Seminole Tribe of Fl. v. Fl., 517 U.S. 44, 54 (1996). The Eleventh Amendment also extends immunity to suits for retrospective monetary relief against state officials in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169–70 (1985). This is because "a suit against a state official in his or her official capacity is . . . no different from a suit against the State itself." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).

To the extent the claims are brought against the Judicial Defendants in their individual capacities, such claims are barred by judicial immunity. It is well settled that when determining whether a judge should be entitled to judicial immunity, "[the reviewing court] must engage in a two-part inquiry . . . First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000) (internal citations and quotation marks omitted). To determine whether an act is "judicial," we must look to the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the [body] in [its] judicial capacity." Stump v. Sparkman, 435 U.S. 349, 362 (1978). If these requirements are met, immunity will not be revoked even if the judge's actions were part of an alleged conspiracy and even when the judge is accused of acting maliciously and corruptly. Dennis v. Sparks, 449 U.S. 24, 26–27 (1980); Pierson v. Ray, 386 U.S. 547, 554 (1967) see also Harvey v. Loftus, 505 F. App'x 87, 90 (3d Cir. 2012) (affirming finding of judicial immunity where the plaintiff alleged her attorney conspired with the presiding judge to have her accept a settlement offer); Keisling v. Renn, 425 F. App'x 106, 108 (3d Cir. 2011) (affirming judicial immunity where various judges allegedly "violated [plaintiff's] rights by entering a series of orders against him.").

Here, the claims against all three of the Judicial Defendants allege that they acted improperly in the execution of their judicial duties. Specifically, Judge Cody presided over Plaintiff's 2014 case in Chester County, Judge Curcillo signed the warrant for fingerprinting, and Judge Royer presided over the contempt hearing in December 2021 and ordered Plaintiff's release from custody. Plaintiff does not

allege that they committed any unlawful acts outside of their judicial capacity, or that they lacked jurisdiction to take any of the actions set forth. Rather, Plaintiff claims that they either performed their judicial functions inadequately or that they somehow conspired with other Defendants. As none of those allegations abrogate judicial immunity, I will dismiss all claims against them.[1]

### IV.   MOTION TO DISMISS BY DEFENDANT MICHELLE FREI

Defendant Michelle Frei, the Assistant District Attorney of Chester County, separately moves, under Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims against her. The sole allegations against Frei concern her prosecution of Plaintiff in Chester County in 2014 on charges of harassment and resisting arrest. According to the Complaint, during that matter, Frei was the prosecuting attorney and withheld numerous pieces of evidence and was "f**ing the cop who assaulted and berated the plaintiff." (Compl. ¶¶ 22, 25.) The case ended in a guilty plea in 2015, and Frei allegedly worked with defense counsel and the judge to get the case closed. (Id. ¶ 28.) Plaintiff claims that because he is a "very well known political operative in Chester County" and "made numerous comments on the County facebook pages regarding his case," Frei did not like it when facts were made public. (Id. ¶¶ 31–33.)

Prosecutors, like Defendant Frei, are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976). Absolute immunity extends to the decision to initiate a prosecution, presenting a state's case at trial, id. at 431, "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992), and appearing before a judge to present evidence. Fogle v. Sokol, 957 F.3d 148, 159–60 (3d Cir. 2020).

---

[1] The Judicial Defendants also contend that the action against them is barred by the Rooker-Feldman doctrine, the Younger abstention doctrine, and principles of federalism and comity. As I dismiss the claims against the Judicial Defendants on other grounds, I need not address these arguments.

Because the only allegations against Frei involve her activity "intimately associated with the judicial phase of the criminal process" against Plaintiff on behalf of the Commonwealth, she is entitled to absolute immunity.[2] Id.

## V. MOTION TO DISMISS BY DEFENDANTS COUNTY OF DAUPHIN, DAUPHIN COUNTY DISTRICT ATTORNEY FRANCIS CHARDO, DAUPHIN COUNTY SHERIFF NICHOLAS CHIMIENTI, JR., AND DAUPHIN COUNTY EMPLOYEES

Defendants Dauphin County, Dauphin County District Attorney Francis Chardo ("Chardo"), Dauphin County Sheriff Nicholas Chimienti, Jr., and Dauphin County employees (collectively, the "Dauphin County Defendants") also move to dismiss all claims against them.

### A. Claims Against Francis Chardo

As detailed above, the Complaint raises numerous claims against Dauphin County District Attorney Chardo in connection with his prosecution of Plaintiff in 2010 and his subsequent arrest of Plaintiff for fingerprinting in 2021. Plaintiff asserts that Chardo knew that the 2010 case against Plaintiff was based on numerous falsehoods and was prosecuted solely to chill Plaintiff's civil rights and that Chardo waited over eleven years to get the fingerprint warrant.

Like the claims against Defendant Frei, these claims are barred by the doctrine of absolute immunity. As noted above, "[a]bsolute immunity attaches to all actions performed in a 'quasi-judicial' role." Kulwicki, 969 F.2d at 1463. "The decision to initiate a prosecution is at the core of the prosecutor's judicial role," and any harm to a falsely-charged defendant is remedied by safeguards built into the judicial system, such as probable cause, dismissal of the charges, as well as state codes of professional responsibility. Id. at 1463–64; see also Imbler, 424 U.S. at 431 (holding a prosecutor immune from a civil suit based on actions initiating a prosecution and presenting the State's case). Accordingly, I dismiss all claims against Defendant Chardo.

---

[2] Frei also contends that the Complaint is an improper collateral attack on his 2015 criminal conviction. Having dismissed Plaintiff's claims on other grounds, I need not address this argument.

9

B. **Claims Against Dauphin County, Sheriff Chimienti, and Dauphin County Employees**

Plaintiff also brings claims against the remaining Dauphin County Defendants, pursuant to 42 U.S.C. § 1983, for First Amendment retaliation and unlawful seizure, as well as state law claim for kidnapping and a conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985.

1. First Amendment Retaliation

Plaintiff first alleges that the Dauphin County Defendants retaliated against him for the proper exercise of his First Amendment rights, in violation of 42 U.S.C. § 1983.[3]

To set forth a claim for retaliation under the First Amendment, a plaintiff must allege facts to establish (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. See Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).

Here, Plaintiff contends that he contacted the Dauphin County District Attorney's Office seeking assistance in vacating a guilty plea from 2010 because of a lack of evidence to support the conviction

---

[3]  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. The statute itself does not independently create substantive rights, but rather merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Kopec v. Tate, 361 F.3d 772, 775–76 (3d Cir. 2004); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002); Bush v. Lancaster City Bureau of Police, No. 07–3172, 2008 WL 3930290, at *3 (E.D. Pa. Aug. 26, 2008). A plaintiff may bring a § 1983 action if he alleges that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. In other words, a plaintiff alleging a § 1983 violation must demonstrate that: (1) the defendants acted under color of [state] law; and (2) their actions deprived [the plaintiff] of rights secured by the Constitution or federal statutes. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).

and newly discovered evidence proving Plaintiff's innocence. Alternatively, Plaintiff sought expungement of the records or a sealing of the records and conviction from public view. Dauphin County declined to help Plaintiff and, instead, "orchestrated a criminal and tortuous conspiracy to retaliate against the Plaintiff and suppress the plaintiff's civil rights under the color of law." (Compl. ¶¶ 3–4.)

Although these allegations plead that Plaintiff exercised some constitutionally protected conduct, they fail to set forth any facts from which to draw a plausible inference that there was a causal link between that conduct and some retaliatory action by the Dauphin County Defendants. Given the speculative nature of this claim, I will dismiss it.

    2. <u>Unlawful Seizure under the Fourteenth Amendment</u>

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides in part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const., amend. IV. To establish a claim under the Fourth Amendment, a plaintiff must show that the actions of the defendant: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances. <u>Ker v. Calif.</u>, 374 U.S. 23, 30 (1963); <u>Parker v. Wilson</u>, No. 98-cv-3531, 2000 WL 709484, *3 (E.D. Pa. May 30, 2000) (citing <u>Brower v. Cnty. of Inyo</u>, 489 U.S. 593, 595 (1989)). A seizure is a restraint of liberty by show of force or authority and occurs "when a reasonable person in the position of the plaintiff would not feel free to decline a request of a government agent or to terminate an encounter with a government agent." <u>Brown v. Commonwealth</u>, No. 99-4901, 2000 WL 562743, *4 (E.D. Pa. May 8, 2000) (citing <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991)). Under the Fourth Amendment, an arrest by a police officer based on probable cause cannot become the source of a claim for unlawful seizure. <u>See</u> <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995); <u>Nimley v. Baerwald</u>, No. 02-cv-7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (stating that, in a § 1983 action, the key element of a cause of action for unlawful arrest is that the law enforcement agent arrested the plaintiff without probable cause).

The Complaint here simply alleges that Plaintiff was arrested by a Pennsylvania State Trooper, who informed him that that he was being held on warrant from Dauphin County. (Compl. ¶ 20.) After fingerprinting and detention in Montgomery County, Plaintiff was transported to Dauphin County for a contempt hearing and released. As none of the Dauphin County Defendants played any role in the alleged seizure, Plaintiff cannot maintain a Fourth Amendment claim against them. See Arditi v. Subers, 216 F. Supp. 3d 544, 551 (E.D. Pa. 2016) (dismissing Fourth Amendment claim against officers who played no role in arrest or seizure of plaintiff).

### 3. Kidnapping Claim

Plaintiff also brings a kidnapping claim against the Dauphin County Defendants. Neither the federal kidnapping statute, 18 U.S.C. § 1201, nor Pennsylvania's kidnapping statute, 18 Pa.C.S. § 2901, create a private cause of action. See Miller v. Broaddus, No. 22-cv-2738, 2023 WL 5517215, at *9 (E.D. Pa. Aug. 25, 2023). This claim must therefore be dismissed.

### 4. Conspiracy Claim

To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. See Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999), aff'd, 210 F.3d 358 (3d Cir. 2000); Holt Cargo Sys. Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (there can be no liability for a conspiracy to violate section 1983 without an actual violation of section 1983); see also Goldschmidt v. Patchett, 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.").[4]

---

[4] Plaintiff also appears to allege a claim for a conspiracy under 28 U.S.C. 1985(3), which requires that a plaintiff establish the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an

As Plaintiff has failed to allege a plausible claim that the Dauphin County Defendants violated any of his constitutional rights, they cannot be liable for a conspiracy. Moreover, Plaintiff has set forth no facts from which to draw any inference that the Dauphin County Defendants conspired, either with each other or with the other Defendants. Therefore, I will dismiss this claim.

     5. <u>Section 1983 Claim Against Dauphin County</u>

Finally, Dauphin County seeks to dismiss the § 1983 claim against it.

The standard for alleging § 1983 claims against a municipality is different than against an individual defendant. In order to recover against a municipality or municipal corporation under § 1983, a plaintiff must plead that the entity itself caused an injury through the implementation of a policy, practice or custom. <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 694 (1978); <u>Natale v. Camden Cty Corr. Facility</u>, 318 F.3d 575 (3d Cir. 2003). Section 1983 imposes liability on a municipality where, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." <u>Bd. of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 404 (1997) (emphasis in original). The Third Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; . . . second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; . . . third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

<u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).

A plaintiff must prove that the action in question, conducted pursuant to official municipal policy, caused his/her injury. <u>Connick v. Thompson</u>, 563 U.S. 51, 60–61 (2011). When a plaintiff alleges that

---

act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

<u>Farber v. City of Paterson</u>, 440 F.3d 131, 134 (3d Cir. 2006). For the same reasons that Plaintiff's civil conspiracy claim under § 1983 fails, his claim under § 1985 must fail as well.

a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 61 (citations omitted).

Notably, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. Thus, in the absence of an underlying violation by the individual state actors, Monell liability cannot stand. Grazier v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights); Clayworth v. Luzerne Cnty, No. 11-cv-254, 2011 WL 6055407, at *7 (M.D. Pa. Dec. 6, 2011) (holding that in the absence of an underlying violation by the individual state actors, Monell liability cannot stand), aff'd, 513 F. App'x 134 (3d Cir. 2013).

Here, Plaintiff seeks to hold Dauphin County liable under a Monell theory for the acts of its employees. As set forth above, however, Plaintiff has failed to state a plausible claim for relief against any of these employees. Absent an underlying violation by the individual actor, Monell liability cannot stand against Dauphin County. Grazier, 328 F.3d at 124.

Therefore, I will dismiss all claims against the Dauphin County Defendants.[5]

## VI. MOTION TO DISMISS BY DEFENDANTS COUNTY OF CHESTER, MAUREEN TRESTON, WILLIAM MANN, RONALD PHILLIPS, AND CHESTER COUNTY CORRECTIONAL OFFICERS

Defendants County of Chester, Maureen Treston (Collections Enforcement Officer for Chester County), William Mann (Collections Enforcement Unit Supervisor of the County of Chester's Probation

---

[5] The Dauphin County Defendants also allege that they are entitled to qualified immunity. Having dismissed all claims against them pursuant to Fed. R. Civ. P. 12(b)(6), I need not address this argument.

Department), Ronald Phillips (Warden of the Chester County Prison), and Chester County Correctional Officers (the "Chester County Defendants") also move to dismiss all claims against them as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) or, alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6). As I find that Plaintiff has failed to state any plausible claim for relief, I will dismiss the claims on that ground.

A.  **First Amendment Retaliation Claim**

As noted above, to set forth a claim for retaliation under the First Amendment, a plaintiff must allege facts to establish (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. See Thomas, 463 F.3d at 296.

While Plaintiff's allegations are not entirely clear, he appears to assert that because he was a "well-known political operative" and "made numerous comments on the County facebook pages regarding his case," the Chester County Defendants pursued criminal charges against him in 2014. Plaintiff then asserts that in 2021, the Chester County Defendants issued a frivolous warrant against him. Beyond mere speculation that there is some connection between Plaintiff's unspecified social media posts and the warrant, Plaintiff sets forth no facts from which I can find a plausible causal link between the protected First Amendment conduct and the retaliatory action. Accordingly, I will dismiss this claim.

B.  **Unlawful Seizure**

For the same reasons I dismissed the unlawful seizure claim against the Dauphin County Defendants, I will dismiss that claim against the Chester County Defendants. The Complaint here simply alleges that Plaintiff was arrested by a Pennsylvania State Trooper, who informed him that that he was being held on warrant from Dauphin County. Subsequently, after fingerprinting and detention in Montgomery County, Plaintiff was transported to Dauphin County for a contempt hearing and released. None of the Chester County Defendants played any role in the alleged seizure, and there is no cause of

action for illegal seizure against officers or individuals who did not take part in any actual seizure. See Arditi, 216 F. Supp. 3d at 551.

### C. Aiding and Abetting Kidnapping

Plaintiff brings a claim against the Chester County Defendants for aiding and abetting kidnapping. As set forth above, however, the Pennsylvania kidnapping statute sets forth no private cause of action. 18 Pa.C.S. § 2901, This claim will be dismissed.

### D. Conspiracy to Violate Civil Rights

Similar to the Dauphin County Defendants, the conspiracy claim against the Chester County Defendants is meritless. Plaintiff has not alleged any constitutional violation by the Chester County Defendants, meaning that they cannot be liable for a conspiracy. Further, the Complaint alleges no facts from which to infer that any unlawful agreement among Defendants existed.

### E. *Monell* Claim Against Chester County

Plaintiff seeks to hold Chester County liable for the acts of its employees under a Monell theory. As there are no underlying violations by any individual actors, and as Plaintiff has failed to identify any policy, custom, or practice that has resulted in injury to Plaintiff, I will dismiss this claim.

### VII. REMAINING CLAIMS AGAINST MONTGOMERY COUNTY AND TROOPER JOHN DOE OF THE PENNSYLVANIA STATE POLICE

Given the foregoing, Plaintiff has remaining claims against only Montgomery County and Pennsylvania State Trooper John Doe. It is not clear from the docket whether either of these Defendants has been served, and neither has entered an appearance on the docket.[6] Nonetheless, the Prison Litigation Reform Act, 28 U.S.C. § 1915A, directs that where a prisoner has filed a civil action seeking redress

---

[6] The docket contains no indication that either of these defendants were properly served. Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Although more than ninety days have passed since the filing of the Complaint, I will, in lieu of requiring proper service, address the claims on their merits.

from a governmental entity or employee of a governmental entity, I must *sua sponte* dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted."[7] 28 U.S.C. § 1915A.

### A. Trooper John Doe

Here, the only allegations against Pennsylvania State Trooper John Doe assert that, on October 22, 2001, Trooper Doe arrested Plaintiff pursuant to a warrant issued by Chester County. Trooper Doe handcuffed Plaintiff and transported him to the State Police barracks and, subsequently, brought him to Montgomery County Correctional Facility.

Nothing in these allegations suggest that Trooper Doe engaged in any First Amendment retaliation. Likewise, there is no plausible allegation that Trooper Doe participated in any conspiracy.

Finally, to the extent Plaintiff alleges a Fourth Amendment violation against Trooper Doe, I find that any such claim is precluded by qualified immunity.[8] Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223. 231 (2009). The Supreme Court has consistently "stressed the importance of resolving [qualified] immunity questions

---

[7] Plaintiff is currently a prisoner at S.C.I. Phoenixville.

[8] "[I]n appropriate circumstances, the court may consider qualified immunity sua sponte." Njos v. Carney, 12-cv-1375, 2018 WL 3217690, at *1 n.1 (M.D. Pa. July 28, 2017) (citing Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming sua sponte recommendation of qualified immunity by the United States Magistrate Judge)).

at the earliest possible stage of the litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991); see also Miller v. Clinton Cty., 544 F.3d 542, 547 (3d Cir. 2008).

To overcome a defense of qualified immunity, a plaintiff must "plead[ ] facts showing that (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U. 730, 740 (2002) (quotations omitted). To meet this test, generally "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001). At the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly-established one. Id.; see Gaymon v. Borough of Collingdale, 150 F.Supp.3d 457, 462 (E.D. Pa. 2015).

The United States Court of Appeals for the Third Circuit has recognized that "[w]here an officer executes an arrest based on an objectively reasonable belief that there is a valid warrant, he may be entitled to qualified immunity." Noone v. City of Ocean City, 60 F. App'x 904, 908 (3d Cir. 2003). "It is usually reasonable for an officer to believe a warrant was issued for probable cause. Furthermore, an arresting officer is not required to make an independent investigation for every suspect who claims innocence provided the officer's reliance on arrest warrant is reasonable in light of the relevant circumstances." Id.

Here, Plaintiff concedes that Trooper Doe was executing an arrest warrant that named him as the arrestee, and the Complaint attaches a copy of that warrant. While Plaintiff challenges the motivations behind the issuance of the warrant, he sets forth no facts to suggest that Trooper Doe should have known of those motivations or should have been suspicious of the warrant's validity. Nor does Plaintiff allege

that he ever expressed concern about the warrant to Trooper Doe. Accordingly, I find that Trooper Doe is protected by qualified immunity.

### B. Montgomery County

The allegations against Montgomery County are equally deficient. The Complaint alleges that, after his arrest at his home, he was brought to the State Police barracks and, subsequently, to Montgomery County Correctional Facility, where he was strip searched and processed. He was then held there for several hours while waiting for transport to Chester County Prison. Plaintiff notes that had previously sued Montgomery County Correctional Facility due to his being raped there in 2013.

Nothing in these allegations alleges that Montgomery County maintained any policy, custom, or practice that was in any way responsible for his arrest and continued detention that day. Indeed, by Plaintiff's own account, Montgomery County Correctional Facility acted as a mere holding cell between his arrest and his ultimate transfer to Chester County. Therefore, his Monell claim against Montgomery County will be dismissed.

## VII. CONCLUSION AND LEAVE TO AMEND

In light of the foregoing, I will grant all Defendants' Motions to Dismiss. Nonetheless, I remain cognizant that in a civil rights case, a court must *sua sponte* allow a plaintiff leave to amend his or her complaint unless it would be inequitable or futile to do so. Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Plaintiffs' claims against Defendants Jacqueline Carroll Cody, Deborah Curcillo, and Allison Bell Royer, Michelle Frei, and Francis Chardo are all barred by some form of immunity, and, as such, any amendment would be frivolous. I will dismiss these claims with prejudice.

As to the remaining Defendants, it is conceivable that Plaintiff could allege sufficient facts to support his dismissed claims. Accordingly, Plaintiff shall be granted leave to amend his Complaint regarding these claims, but only if he can allege plausible facts in good faith.

An appropriate Order follows.