**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRYAN J. SHINE,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **NO. 23-1952** |
| **v.** | : | |
| | : | |
| **COUNTY OF MONTGOMERY,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM OPINION**</u>

Goldberg, J.                                                                                July 15, 2024

Plaintiff Bryan J. Shine, proceeding *pro se*, brings this action pursuant to 42 U.S.C. §§ 1983, 1981, and 1985(2) alleging violations of his constitutional rights and conspiracy to violate his rights during his arrest and detention on several warrants. Following an initial round of motions, I dismissed claims against many of the named Defendants with prejudice and granted leave for Plaintiff to file an amended complaint for those claims dismissed without prejudice. In his current Amended Complaint, he names as Defendants the County of Montgomery, the County of Chester, the County of Dauphin, Francis Chardo, Maureen Treston, William Mann, Nicholas Chimienti, Jr., John/Jane Doe correctional officers from the Montgomery County Correctional Facility, John/Jane Does from the Chester County Prison, two John Roes from the Dauphin County Sheriff's Office, Ronald M. Phillips, and John/Jane Doe correctional officers from the Dauphin County Prison.

Currently pending are three separate Motions to Dismiss by: (1) the County of Montgomery and John/Jane Doe correctional officers from the Montgomery County Correctional Facility (collectively, "Montgomery County Defendants"); (2) the County of Chester, Maureen Treston, William Mann, Ronald Phillips, and John/Jane Doe correctional officers from the Chester County Prison (collectively, "Chester County Defendant"); and (3) County of Dauphin, District Attorney Francis Chardo, Sheriff Nicholas Chimienti, Jr., two John Roes from the Dauphin County Sheriff's Office, and John/Jane Doe correctional

1

officers from the Dauphin County Prison (collectively, "Dauphin County Defendants").  Plaintiff has not responded to any of the Motions.  For the following reasons, I will grant the Motions in full and dismiss all claims with prejudice.

## I.    FACTS IN THE AMENDED COMPLAINT

The following facts are set forth in the Amended Complaint.[1]

Plaintiff alleges that throughout the spring, summer, and fall of 2021, he contacted the Dauphin County District Attorney's Office, specifically Defendant District Attorney Francis Chardo, seeking assistance in vacating a guilty plea from 2010 because of a lack of evidence to support the conviction and newly discovered evidence proving Plaintiff's innocence.   Alternatively, Plaintiff sought expungement of the records or a sealing of the records and conviction from public view.  Defendant Chardo and Dauphin County declined to help Plaintiff and, instead, "orchestrated a criminal and tortuous conspiracy to retaliate against the Plaintiff and suppress the plaintiff's civil rights under the color of law." (Am. Compl. ¶¶1–4.)

On October 22, 2021, a uniformed trooper with the Pennsylvania State Police arrived at Plaintiff's residence in Mont Clare, Montgomery County, and stated, in the presence of Plaintiff's landlord, that he had a warrant from Dauphin County to compel Plaintiff's fingerprinting.  According to the Amended Complaint, District Attorney Chardo knew that the case against Plaintiff was based on numerous lies and falsehoods and was only prosecuted to chill Plaintiff's civil rights, and Chardo waited over eleven years to get the fingerprint order.  The resulting warrant, which was signed by Judge Deborah E. Curcillo, stated that the warrant was issued for Plaintiff and that, "[u]pon apprehension, he will be taken for fingerprinting and processing," that "[a]fter processing, he may be released," and that if he

---

[1]    In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

refused to submit to processing, "he is to be committed to the Dauphin County Prison pending a contempt hearing."  According to the Amended Complaint, Chardo knew that the whole apparatus of Dauphin County had no right to hold him, but nonetheless ordered him to be held.  (Id. ¶¶ 5–8, 11–13, 33–35, & Ex. 1.)

Without showing Plaintiff the warrant, the Pennsylvania State Trooper handcuffed him and transported him to the Skippack barracks of the State Police.  Plaintiff was fingerprinted and held handcuffed and shackled to a bench.  The Trooper then informed Plaintiff that he was being held on warrant from Dauphin County.  Plaintiff claims that the only probation warrant was from Chester County for a case from 2014, which was closed with a guilty plea before Defendant Judge Cody in 2015. He believes that his probation in the Chester County case ended in 2017, and that the Chester County District Attorney's Office treated him "horribly" because of his civil rights action against the County.  He contends that his probation officer threatened him with imprisonment if he continued the case, and various officers with the East Vincent Township police threatened his parents and kicked his dog.  (Id. ¶¶ 15–29.)

Later in the day on October 22, 2021, Plaintiff was transported to Montgomery County Correctional Facility ("MCCF").  Plaintiff informed the Trooper that he had to work that evening, and the Trooper gave Plaintiff the opportunity to call his employer.  The Trooper then took his cell phone, and Plaintiff was strip searched and processed.  Plaintiff was held at MCCF for several hours waiting for transport to Chester County Prison.  Plaintiff notes that he had previously sued MCCF relating to his being raped in 2013 while improperly in custody, but the presiding judge mishandled the case.  He claims that his detention was a direct result of that private complaint, that the staff at the MCCF are untrained and unsupervised, and that the County of Montgomery regularly and routinely underfunds the MCCF. In addition, Plaintiff alleges that the County of Montgomery and its staff at MCCF create lists of persons who have sued them and then retaliate against them.  (Id. ¶¶ 37–56.)

In the evening of October 22, 2021, Plaintiff was transported by constable Gregory Willauer and his father to Chester County Prison.  Although much of Plaintiff's property was given to Constable Willauer, MCCF staff allegedly withheld Plaintiff's phone and told him to go and "fuck yourself."  Despite multiple calls over the following month, Plaintiff claims that he could not retrieve his phone and he had to purchase a new IPhone 13 and to open an account with Verizon.  Plaintiff asserts that he was never afforded a due process hearing regarding his property, and he filed a private complaint against the staff of MCCF in December 2022.  Within about eight weeks, his old iPhone XR was returned to him, but it was outdated and worthless.  Plaintiff asserts that Montgomery County never contacted any other counties to determine whether his arrest and detention was lawful.  If it had, Plaintiff contends that he would have been released from MCCF with a date to appear in Chester County.  (Id. ¶¶ 57–81.)

Later that evening of October 22, 2021, Plaintiff was checked into Chester County Prison, where he was again strip searched.  He contends that he was never informed as to why he was being held except for the fact that there was a probation warrant out of Chester County.  Plaintiff believes that the only reason he was being held was to suppress his First Amendment rights.  Plaintiff alleges that Defendant Treston, a Collections Enforcement Officer for Chester County, contacted his aunt and uncle demanding they pay her money supposedly owed by Plaintiff, but they believed it was a scam and refused to pay. (Id. ¶¶ 84–95.)

Plaintiff was held in Chester County Prison over the weekend and, the following Monday, was called into a meeting with a prison case worker, who informed him that he was being held on a probation warrant regarding supposedly not having paid fines and costs regarding the 2014 case in Chester County.  Plaintiff spoke on the phone with Defendant Treston, who stated that the probation warrant for "failure to appear" was being lifted that day.  When Plaintiff asked to speak with a Chester County public defender, the case worker laughed at him and said, "we don't do that here."  Plaintiff was then given a date and time to appear before Defendant Judge Royer on December 16, 2021.  Treston purportedly admitted, "there's no reason to hold you.  The Dauphin warrant was for fingerprints and you were already

4

fingerprinted.  We [Chester County] have no reason to hold you and neither does Dauphin."  Plaintiff contends that Chester County Prison regularly underfunds its prisons, resulting in employees who fail to follow rules.  Plaintiff claims that despite the fact that fingerprinting was completed and the warrant was being lifted, he was held for three more days.  He asserts that Chester County never informed Dauphin County that the fingerprinting was complete.  (Id. ¶¶ 96–120.)

On Wednesday, October 27, 2021, Plaintiff was transported to Harrisburg by two John Roe Defendants—under the direction of Defendant Chardo and Defendant Nicholas Chimienti, Jr.  Plaintiff avers that he remained handcuffed and shackled during the more than one hundred miles to Harrisburg. He was then processed and again strip searched at "13.40 hours."  According to the Amended Complaint, even though Defendants Chardo, John Roes, and Chimienti knew that the business office of Dauphin County Prison closed at 4:00 p.m., they did not inform Plaintiff that he was being released until 4:10 p.m. As a result, Plaintiff contends that he could not get his debit card, credit cards, and cash, and had to return the following day.  Plaintiff asserts that he was thus forced to walk the streets of Harrisburg for the evening before getting admitted to a men's crisis homeless shelter, where he spent the night until he could return to the Dauphin County Prison and collect his property.  From Harrisburg, Plaintiff traveled on Amtrak for over twelve hours to get home.  Having missed several days of work, Plaintiff claims that he was terminated and had to pawn family heirlooms and valuables to pay bills.  (Id. ¶¶121–163.)

According to the Amended Complaint, on December 16, 2021, Plaintiff presented himself to the Chester County probation office and paid $20 as directed by Defendant Treston, who informed him that his name was being removed from the hearing list and he only needed to continue to pay $20 each and every month to avoid re-arrest.  Plaintiff nonetheless appeared as scheduled before Judge Royer, at which time Defendants Mann and Treston informed Judge Royer that they had requested a failure to appear warrant earlier in 2021 because of Plaintiff's supposed failure to pay costs.  When Plaintiff tried to speak, Judge Royer rescheduled the hearing for March 2, 2022.  (Id. ¶¶ 164–169.)

On February 25, 2022, a continuance order was signed setting an April 29, 2022 date[2] for a contempt hearing.  Plaintiff claims that he never received this notice because it was mailed to his paternal aunt and then returned to the Post Office.  Plaintiff avers that despite Chester County knowing that Plaintiff did not receive notice of the contempt hearing, Judge Royer, at the motion of Defendants Mann and Treston, issued an all-county and all-state extradition warrant for Plaintiff.  (Id. ¶¶ 170–181.)

According to the Amended Complaint, on March 2, 2022, Plaintiff appeared for the contempt hearing, at which time Defendant William Mann, the Collections Enforcement Unit Supervisor of the County of Chester's Probation Department, moved to withdraw the contempt because the Chester County case against Plaintiff did not contain any order to pay fines or costs.  Plaintiff asserts that Chester County, "through sheer stupidity and gross negligence never bothered to check their own records" which resulted in a faulty warrant.  Plaintiff claims that, by policy and practice, the Chester County probation office lies to judges to gets warrants.  (Id. ¶¶ 182–194.)

Plaintiff filed the current action on May 23, 2023, and the current Amended Complaint on November 15, 2023, enumerating the following claims for relief: (1) First Amendment retaliation; (2) unlawful seizure against Montgomery County; (3) unlawful seizure against Chester County; (4) unlawful seizure against Dauphin County; (5) aiding and abetting kidnapping against Chester County and Montgomery County; (7) conspiracy to violate civil rights against all Defendants; and (8) state law injuries.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has

---

[2]    The Amended Complaint says, "On February 25, 2021 a continuance order was signed setting an April 29, 2021 date for a contempt hearing."  (Am. Comp. ¶ 172 (emphasis added).)  Given the chronological flow of Plaintiff's Amended Complaint, I presume he meant that these events occurred in 2022.

recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. <u>Id.</u> at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. <u>Bistrian v. Levi</u>, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. <u>Id.</u> at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." <u>Id.</u> Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).

A *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." <u>U.S. ex rel. Walker v. Fayette Cty., Pa.</u>, 599 F.2d 573, 575 (3d Cir. 1979), (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. <u>Haines</u>, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that

are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

## III.    DISCUSSION

### A.    First Amendment Retaliation Claims

To set forth a claim for retaliation under the First Amendment, a plaintiff must allege facts to establish (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff alleges First Amendment retaliation claims against all Defendants. Defendants, in turn, move to dismiss these claims.

#### 1.   Montgomery County Defendants

First, as to the Montgomery County Defendants, Plaintiff contends he had previously sued MCCF relating to his having been raped in custody in 2013. Thus, when he was held in MCCF in 2021, Plaintiff asserts that MCCF staff treated him poorly and stole his iPhone. Based on these facts, he contends that Montgomery County employees unlawfully retaliated against him for exercising his First Amendment rights to speech and to petition for a redress of grievances. Specifically, he alleges that "[t]he County of Montgomery and the staff at MCCF regularly and routinely create lists of persons, including the Plaintiff, who have sued the county/MCCF" and "retaliate[s] against persons who have sued them." (Id. ¶¶ 41–51, 54–55.)

Although these allegations plead that Plaintiff exercised some constitutionally protected conduct, they fail to set forth any facts from which to draw a plausible inference that there was a causal link between that conduct and some retaliatory action by the Montgomery County Defendants. There is no unusually suggestive temporal proximity between his suit against MCCF in 2013 and MCCF's poor custodial treatment of him in 2021. Moreover, Plaintiff does not allege any facts that show a pattern of antagonism in the interim period. Given the speculative nature of this claim, I will dismiss it.

2. Chester County Defendants

As in his original Complaint, Plaintiff's Amended Complaint again appears to assert that he was a "well-known political operative" and made numerous comments on the Chester County Facebook pages regarding his 2014 case and the "abusive conduct" by Chester County employees in connection with that case. Plaintiff posits that, due to this activity, the Chester County Probation Department filed a frivolous contempt petition for failure to pay fines and costs, ultimately leading to the issuance of the 2021 Chester County warrant and his ensuing detention.

I previously dismissed this claim, finding no allegations, beyond mere speculation, creating some connection between Plaintiff's unspecified social media posts and the warrant. Plaintiff's Amended Complaint fails to correct the deficiency in this claim, as he fails to allege any facts from which I can reasonably find a plausible causal link between the protected First Amendment conduct and the retaliatory action. Accordingly, I will dismiss this claim with prejudice.

3. Dauphin County Defendants

Plaintiff also re-raises his First Amendment retaliation claim against the Dauphin County Defendants. As in his previous Complaint, Plaintiff contends that he had contacted the Dauphin County District Attorney's Office seeking assistance in vacating a guilty plea from 2010 because of a lack of evidence to support the conviction and newly discovered evidence proving Plaintiff's innocence. Alternatively, Plaintiff sought expungement of the records or a sealing of the records and conviction from public view. Dauphin County and Chardo declined to help Plaintiff and, instead, "orchestrated a criminal

and tortuous conspiracy to retaliate against the Plaintiff and suppress the plaintiff's civil rights under the color of law." (Am. Compl. ¶¶ 3–4.)

In dismissing this claim originally, I found that "[a]lthough these allegations plead that Plaintiff exercised some constitutionally protected conduct, they fail to set forth any facts from which to draw a plausible inference that there was a causal link between that conduct and some retaliatory action by the Dauphin County Defendants." Shine v. County of Montgomery, No. 23-cv-1952, 2023 WL 7190480, at *7 (Nov. 1, 2023). The Amended Complaint does not correct this deficiency. Accordingly, I will dismiss this claim with prejudice.

B.    **Unlawful Seizure/False Imprisonment**

Plaintiff next claims unlawful seizure/false imprisonment by all Defendants.

1.    Montgomery County Defendants

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides in part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const., amend. IV. To establish a claim under the Fourth Amendment, a plaintiff must show that the actions of the defendant: (1) constituted a "search" or "seizure" within the meaning of the Fourth Amendment, and (2) were "unreasonable" in light of the surrounding circumstances. Ker v. Calif., 374 U.S. 23, 30 (1963); Parker v. Wilson, No. 98-cv-3531, 2000 WL 709484, *3 (E.D. Pa. May 30, 2000) (citing Brower v. Cnty. of Inyo, 489 U.S. 593, 595 (1989)). A seizure is a restraint of liberty by show of force or authority and occurs "when a reasonable person in the position of the plaintiff would not feel free to decline a request of a government agent or to terminate an encounter with a government agent." Brown v. Commonwealth, No. 99-cv-4901, 2000 WL 562743, *4 (E.D. Pa. May 8, 2000) (citing Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Under the Fourth Amendment, an arrest by a police officer based on probable cause cannot become the source of a claim for unlawful seizure. See Groman v. Twp. of Manalapan, 47 F.3d 628, 636

(3d Cir. 1995); <u>Nimley v. Baerwald</u>, No. 02-cv-7417, 2004 WL 1171733, at *7 (E.D. Pa. May 26, 2004) (stating that, in a § 1983 action, the key element of a cause of action for unlawful arrest is that the law enforcement agent arrested the plaintiff without probable cause).  Courts have repeatedly found that persons arrested on facially valid bench warrants may not sustain Fourth Amendment claims against arresting and confining officials.  <u>See</u> <u>Rothermel v. Dauphin County, PA</u>, No. 16-cv-1669, 2020 WL 1490774, at *12 & n.5 (M.D. Pa. Jan. 21, 2020) (collecting cases).  An arresting officer is not required to make an independent investigation for every suspect who claims innocence provided the officer's reliance on the arrest warrant is reasonable in light of the relevant circumstances.  <u>Noone v. City of Ocean City</u>, 60 F. App'x 904, 908 (3d Cir. 2003).

Here, Plaintiff claims that he was falsely imprisoned and unlawfully seized in violation of his Fourteenth Amendment rights when he was held at MCCF for several hours, on October 22, 2021, while awaiting transport to Chester County Prison.  Although he claims that Montgomery County employees unlawfully detained him on invalid warrants, he attaches copies of the Dauphin County and Chester County warrants providing authority for his arrest and detention, neither of which show any facial invalidity.  Plaintiff does not set forth any facts which would have alerted the Montgomery County Defendants that the warrants may be problematic. Indeed, as I noted in my previous decision, Plaintiff's statement of the facts suggests only that MCCF acted as a holding cell between his arrest and his ultimate transfer to Chester County.  Nothing in the Amended Complaint changes that conclusion.

2.  <u>Chester County Defendants</u>

In response to the unlawful seizure/false arrest claims, the Chester County Defendants claim that all of the individual Defendants—Treston, Mann, Phillips,[3] and the John and Jane Doe Correctional Officers—are entitled to qualified immunity.[4]

Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009).  "The standard for qualified immunity is tilted in favor of shielding government actors and 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" <u>Zaloga v. Borough of Moosic</u>, 841 F.3d 170, 174 (3d Cir. 2016) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).  The Supreme Court has consistently "stressed the importance of resolving [qualified] immunity questions at the earliest possible stage of the litigation." <u>Hunter</u>, 502 U.S. at 227; <u>see also</u> <u>Miller v. Clinton Cty.</u>, 544 F.3d 542, 547 (3d Cir. 2008).

The analysis of qualified immunity is divided into two parts: first, a court considering qualified immunity must ask whether the alleged facts, taken in the light most favorable to the injured party, "show

---

[3]     Although Plaintiff names Warden Ronald Phillips as a Defendant in the Amended Complaint, the only allegations against him are that Phillips maintains a policy to not permit prison staff to offer legal advice to inmates or to share warrants or other detention information, and that as a proximate result of this rule, Plaintiff was denied his civil rights.  (Am. Compl. ¶¶ 100, 114.)  Plaintiff does not how explain either how such a rule is unlawful or in what way he was injured.  Absent any other allegations against Phillips, I will dismiss the Amended Complaint against him.

[4]     It is unclear whether the individual Chester County Defendants seek qualified immunity on all claims or only on the unlawful seizure claims.  As their qualified immunity arguments only seem to address the conduct related to the seizure of Plaintiff, I focus solely on that claim.

[that] the [government official]'s conduct violated a constitutional right"; second, the court must ask whether the right was clearly established "in light of the specific context of the case, [and] not as a broad general proposition." Zaloga, 841 F.3d at 174 (quotations omitted).

To overcome a defense of qualified immunity, a plaintiff must "plead[ ] facts showing that (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U.S 730, 740 (2002) (quotations omitted). To meet this test, generally "there must be sufficient precedent at the time of the action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001). At the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly-established one. Id.; see Gaymon v. Borough of Collingdale, 150 F.Supp.3d 457, 462 (E.D. Pa. 2015).

The United States Court of Appeals for the Third Circuit has recognized that "[w]here an officer executes an arrest based on an objectively reasonable belief that there is a valid warrant, he may be entitled to qualified immunity." Noone v. City of Ocean City, 60 F. App'x 904, 908 (3d Cir. 2003). "It is usually reasonable for an officer to believe a warrant was issued for probable cause. Furthermore, an arresting officer is not required to make an independent investigation for every suspect who claims innocence provided the officer's reliance on arrest warrant is reasonable in light of the relevant circumstances." Id.

Here, as to Defendants Maureen Treston and Defendant William Mann, the Amended Complaint alleges that Plaintiff was checked into Chester County Prison on October 22, 2021, based on warrants from both Chester and Dauphin Counties. (Am. Compl. ¶¶ 84–88.) According to Plaintiff, Treston had previously contacted Plaintiff's aunt and uncle demanding that they pay money Plaintiff supposedly

owed.  He claims that Treston and her supervisor, Mann, "knew or should have known that Plaintiff was not obligated to pay anything because there was no court order for him to pay." (Id. ¶¶ 91–94.)  Plaintiff further asserts that although a contempt hearing was scheduled, Chester County employees "incompetent[ly]" mailed the notice to the wrong address (Plaintiff's maternal aunt's house), and then Treston and Mann about the notice and about Plaintiff's parole status. (Id. ¶¶ 93–96; 172–81.)  Plaintiff alleges that subsequently, in December 2021, Treston and Mann incorrectly informed the judge that they requested a failure to appear warrant in 2021 because of Plaintiff's supposed failure to pay costs. (Id. ¶¶ 164–168.)

Plaintiff has not shown that any of the actions attributed to Treston and Mann were outside the scope of their official duties or violated any clearly-established constitutional right.  Indeed, according to exhibits attached to Plaintiff's original Complaint: (1) Plaintiff had previously been ordered by Chester County to pay $50 per month towards his balance of fines, court costs, restitution, supervision, and administrative fees; (2) Plaintiff had not made a payment since May 11, 2020; (3) a warrant was issued for Plaintiff to appear for a determination if he was in contempt for failure to pay costs and fines; and (4) as of March 2022, Plaintiff was continuing to pay those costs of and fines, suggesting that a valid fine obligation remained in place.  These exhibits also show that Treston and Mann attempted to mail Plaintiff the failure to pay notices and hearing notices to what they believed to be Plaintiff's address.  Even if Treston and Mann somehow erred in representing that Plaintiff owed money and had not appeared in court as required, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter, 502 U.S. at 229.  Plaintiff's conclusory and speculative statements that Treston and Mann "lied" or purposefully sent notices to a wrong address do not allow for any plausible inference that these Defendants engaged in an irresponsible exercise of power or should have been on notice that their actions were constitutionally prohibited.  As Plaintiff has set forth no reasonable facts from which I can find that Treston and Mann

violated a clearly established constitutional right, I will grant qualified immunity and dismiss all claims against them.

As to the John and Jane Doe Chester County correctional officers, the Amended Complaint alleges only that they held Plaintiff for five days—three days to resolve the Chester County warrant and two days for Dauphin County to take him into custody. Although Plaintiff disputes the validity of the warrants, he concedes that two different counties had issued warrants for his arrest and detention. Plaintiff sets forth no facts from which to infer that these correctional officers should have suspected that either of the warrants were invalid or that the correctional officers should have, in the face of these warrants, advocated for Plaintiff's release. See Berg v. County of Allegheny, 219 F.3d 261, 273 (3d Cir. 2000) ("[W]e have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant."). As Plaintiff has identified no violation of a clearly-established constitutional right, I will also grant qualified immunity to the John and Jane Doe County correctional officers.

       3.   Dauphin County Defendants

Like the Chester County Defendants, the individual Dauphin County Defendants—Sheriff Nicholas Chimienti and the two John Roe Dauphin County employees[5]—contend that they have qualified immunity.[6]

Plaintiff alleges that Defendant Chardo[7] pursued Plaintiff with a warrant to compel fingerprints over eleven years after his case in Dauphin County, which had no merit (Am. Compl. ¶¶ 11, 13.) He

---

[5]     Although Plaintiff identifies as Defendants the John/Jane Doe correctional officers from Dauphin County, he alleges only that they did not return Plaintiff's personal valuables and cash until the day after he was released. Plaintiff sets forth no legal claims against them.

[6]     As with the Chester County Defendants, it appears that the Dauphin County qualified immunity defense focuses solely on the unlawful seizure claim.

[7]     In my Memorandum Opinion granting the Dauphin County Defendants' Motion to Dismiss the claims in the original Complaint, I found that all claims against Defendant Chardo were barred by the doctrine of absolute immunity. Shine v. County of Montgomery, 23-cv-1952, 2023 WL 7190480, at *6

asserts that, on October 27, 2021, Plaintiff was transported by the two John Roe Defendants dispatched by Sheriff Chimienti.  (Id. ¶¶ 121, 129.)  According to Plaintiff, the Roes and Chimienti should have reasonably known that there was no legal basis to detain and transport Plaintiff to Dauphin County.  (Id. ¶¶ 126–29.)

Although Plaintiff disputes the validity of the Dauphin County warrant requested by Chardo and issued by state court judge Deborah Curcillo, he does not dispute that the warrant existed.  Indeed, his original Complaint attaches a copy of the warrant, which indicates that Plaintiff was to be apprehended and taken for fingerprinting and processing in connection with a charge of stalking, and that "[a]fter processing, he may be released," unless he refuses to submit to processing.  (ECF No. 2 p. 24.)  On its face, the warrant was valid, and Plaintiff makes no allegations on which to infer that an objectively reasonable officer would have questioned the validity of that warrant.  Because Plaintiff has not made any plausible claim that Chimienti and the John Roes engaged in an irresponsible exercise of power or should have been on notice that their actions were constitutionally prohibited, I find that they are entitled to qualified immunity.

C.      _Monell_ **Claims Against the Three Counties**

The standard for alleging § 1983 claims against a municipality is different than against an individual defendant.  In order to recover against a municipality or municipal corporation under § 1983, a plaintiff must plead that the entity itself caused an injury through the implementation of a policy, practice or custom.  Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978); Natale v. Camden Cty Corr. Facility, 318 F.3d 575 (3d Cir. 2003).  Section 1983 imposes liability on a municipality where, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  Bd.

---

(E.D. Pa. Nov. 1, 2023).  As such, I dismissed those claims with prejudice.  To the extent the Amended Complaint reasserts claims against Defendant Chardo, I again dismiss them with prejudice.

of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original).  The Third

Circuit has recognized liability for local governments in three circumstances:

> First, the municipality will be liable if its employee acted pursuant to a
> formal government policy or a standard operating procedure long
> accepted within the government entity; . . . second, liability will attach
> when the individual has policy making authority rendering his or her
> behavior an act of official government policy; . . . third, the municipality
> will be liable if an official with authority has ratified the unconstitutional
> actions of a subordinate, rendering such behavior official for liability
> purposes.

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (internal citations omitted).

A plaintiff must prove that the action in question, conducted pursuant to official municipal policy,

caused his/her injury.  Connick v. Thompson, 563 U.S. 51, 60–61 (2011).  When a plaintiff alleges that

a policy "concerns a failure to train or supervise municipal employees, liability under section 1983

requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom

those employees will come into contact."  Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014)

(citations omitted).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily

necessary' to demonstrate deliberate indifference for purposes of failure to train."  Connick, 563 U.S. at

61 (citations omitted); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  Where a failure

to train claim is alleged based on a single incident, the complaint must contain allegations that

policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and

the need for further training "must have been plainly obvious."  City of Canton, 489 U.S. at 390 n.10.

Further, "[l]iability cannot rest only a showing that the employees 'could have been better trained or that

additional training was available that would have reduced the overall risk of continued injury.'"  Thomas,

749 F.3d at 226 (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 10129–30 (3d Cir. 1991)).

Notably, "Congress did not intend municipalities to be held liable unless action pursuant to

official municipal policy of some nature caused a constitutional tort."  Monell, 436 U.S. at 691.  Thus,

in the absence of an underlying violation by the individual state actors, Monell liability cannot

stand.  <u>Grazier v. City of Phila.</u>, 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights); <u>Clayworth v. Luzerne Cnty.</u>, No. 11-cv-254, 2011 WL 6055407, at *7 (M.D. Pa. Dec. 6, 2011) (holding that in the absence of an underlying violation by the individual state actors, <u>Monell</u> liability cannot stand), <u>aff'd</u>, 513 F. App'x 134 (3d Cir. 2013).

       1.  <u>Montgomery County</u>

     As set forth above, Plaintiff alleges that, on October 22, 2021, he was transported by a State Trooper to Montgomery County Correctional Facility ("MCCF"), where he was strip searched and processed.  He speculates that his detention in MCCF was as a direct result of his previous lawsuit against MCCF for events occurring while in custody there in 2013.  He also claims that the staff at MCCF improperly withheld his cell phone, and he had to file a private complaint to get it back.  Eventually, the phone was returned to him broken and damaged.  Plaintiff asserts that the staff at MCCF are untrained and unsupervised, and that the Count of Montgomery regularly and routinely underfunds the MCCF.  In addition, Plaintiff alleges that the County of Montgomery and its staff at MCCF regularly create lists of persons who have sued them and retaliate them.

     Aside from the fact that Plaintiff has not set forth any constitutional violation by a Montgomery County employee on which Montgomery County's § 1983 liability can be based, he has also not properly pled a <u>Monell</u> claim against Montgomery County.  Plaintiff's allegations against Montgomery are only conclusory statements as opposed to facts related to the existence of a specific governmental policy or how that policy caused his injuries.  Plaintiff has failed to set forth any facts to support a pattern of similar constitutional violations that would place Montgomery County on notice of practice that was giving rise to constitutional injuries or to establish proof of knowledge and acquiescence by the policymaker of a custom occurring with sufficient frequency.  Plaintiff's parroting of the legal standard without supporting factual allegations does not allow the reasonable inference that Montgomery County knew that similar constitutional deprivations had previously occurred and acted with deliberate indifference in failing to

prevent them.  In turn, the factual allegations contained in the Amended Complaint are simply insufficient to raise a right to relief above the speculative level.

### 2. Chester County

Plaintiff also seeks to hold Chester County liable under a <u>Monell</u> theory.  Specifically, he alleges that Chester County regularly and routinely underfunds its prison, creates a horrible prison environment, and demeans its staff so that employees do not speak up or advocate for persons imprisoned there.  Further, he asserts that Chester County creates and maintains a policy and practice to wantonly ignore court orders.  (Am. Compl. ¶¶ 111–13.)

This claim fails for several reasons.  First, as with Montgomery County, there is no underlying violation by an individual state actor.  As noted above, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  <u>Monell</u>, 436 U.S. at 691; <u>see also</u> <u>Grazier v. City of Phila.</u>, 328 F.3d 120, 124 (3d Cir. 2003) (disallowing liability on a failure to train theory where a jury determined that the underlying conduct did not violate a plaintiff's constitutional rights).

Moreover, like his allegations against Montgomery, Plaintiff's <u>Monell</u> claims against Chester County are only conclusory allegations as opposed to facts related to the existence of a specific governmental policy or how that policy caused his injuries.  Plaintiff has again failed to plead any facts to support a pattern of similar constitutional violations that would place Chester County on notice of practice that was giving rise to constitutional injuries or to establish proof of knowledge and acquiescence by the policymaker of a custom occurring with sufficient frequency.  As the factual allegations contained in the Amended Complaint are simply insufficient to raise a right to relief above the speculative level, I will dismiss the <u>Monell</u> claim.

### 3. Dauphin County

Finally, Plaintiff seeks to hold Dauphin County liable under a <u>Monell</u> theory.  I previously dismissed this claim because Plaintiff failed to state a plausible claim for relief against any of these

employees.  Plaintiff does not remedy this deficiency in his Amended Complaint, nor does Plaintiff set forth any policy, practice, or custom that was the moving force behind his alleged injury.  Accordingly, I will dismiss this claim with prejudice.

> **D.**    **Conspiracy to Violate Civil Rights**

To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  See Panayotides v. Rabenold, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999), aff'd, 210 F.3d 358 (3d Cir. 2000); Holt Cargo Sys. Inc. v. Delaware River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) (there can be no liability for a conspiracy to violate section 1983 without an actual violation of section 1983), aff'd 165 F.3d 242 (3d Cir. 1999); see also Goldschmidt v. Patchett, 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.").

Plaintiff also appears to allege a claim for a conspiracy under 28 U.S.C. 1985(3), which requires that a plaintiff establish the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

In my Opinion dismissing this claim from the original Complaint, I found that Plaintiff had failed to plead a plausible conspiracy claim against any of the Defendants for two reasons.  Primarily, as Plaintiff has not set forth a cognizable claim that any Defendant violated his constitutional rights, they cannot be liable for any conspiracy to violate those rights.  Moreover, Plaintiff has set forth no facts from which to draw any reasonable inference that any unlawful agreement among the Defendants exists.

either with each other or with the other Defendants.  The Amended Complaint does not correct these deficiencies, and this claim will be dismissed as to all Defendants.

### E.  Aiding and Abetting Kidnapping

Plaintiff also brings an aiding and abetting kidnapping claim against all Defendants.  Neither the federal kidnapping statute, 18 U.S.C. § 1201, nor Pennsylvania's kidnapping statute, 18 Pa.C.S. § 2901, create a private cause of action for aiding and abetting kidnapping.  See Miller v. Broaddus, No. 22-cv-2738, 2023 WL 5517215, at *9 (E.D. Pa. Aug. 25, 2023).  This claim must therefore be dismissed.

### F.  Remaining State Law Claims

Plaintiffs remaining claims against all Defendants allege violations of the Pennsylvania state constitution, including Article I sections 7, 8, 9, 12, 13, 15, 20, and 22, and seek monetary relief.  "No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011).

To the extent Plaintiff sets forth other, unspecified claims under "state common law," I cannot discern what those claims are.  To the extent Plaintiff intends to allege that the three Counties are liable for some intentional torts by their employees, the Pennsylvania Tort Claims Act shields local government entities from such liability.  Panas v. City of Philadelphia, 871 F. Supp. 2d 370, 375–76 (E.D. Pa. 2012). Accordingly, I will dismiss all of Plaintiff's state law claims. [8]

## IV.    CONCLUSION

Although I have given Plaintiff a second opportunity to plead cognizable claims against Defendants, I find that he has not done so.  As such, I will dismiss all claims against them with prejudice and without further leave to amend.

---

[8]     Defendants also move to strike Plaintiff's claim for punitive damages.  As I dismiss all of the substantive claims, I need not address this argument.